**Opinion issued March 18, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-24-00749-CR

_____

## EX PARTE MONTREL BURLEY

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1882284**

## MEMORANDUM OPINION

Appellant Montrel Burley was charged with first degree murder in relation to a shooting on March 30, 2023. The trial court set bond at $1,000,000 and Burley filed a pretrial application for writ of habeas corpus requesting that his bond be reduced. During the hearing on the writ application, Burley presented a written proffer for bond reduction. No other testimony or evidence was presented in support

of the application. Following the hearing, the trial court denied Burley's requested relief.

Burley appeals from the trial court's denial of his pretrial application for writ of habeas corpus, stating he desires to appeal the judgment "in its entirety" including the trial court's denial to reduce the bail bond amount or to set reasonable amount, its denial to set "conditions of release that still achieve[] the purposes of bail bond," and its denial to set "the least restrictive conditions of release that still achieve[] the purposes of bail bond."

We affirm.

## Standard of Review

We review a trial court's decision to grant or deny habeas corpus relief for abuse of discretion. *See Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013) (stating that "the decision of a trial judge at a habeas proceeding regarding the imposition or reduction of bail will not be disturbed by this Court in the absence of an abuse of discretion") (internal quotation marks omitted); *see also Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion); *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (same). When a habeas appeal pertains to pretrial bail, we "measure the trial court's ruling against the relevant criteria by which the ruling was made." *Montalvo*, 315 S.W.3d at 593; *see also Ex parte Dixon*, No. PD-0398-15,

2

2015 WL 5453313, at *2 (Tex. Crim. App. Sept. 16, 2015) (not designated for publication) ("Habeas courts determine the bearing of the evidence on the relevant bail criteria *only* in the first instance. On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion.") (emphasis in original) (citing TEX. CODE CRIM. PROC. art. 17.15; TEX. CONST. art. 1, §§ 11, 13).

We will not disturb a trial court's ruling unless it falls outside the zone of reasonable disagreement. *See Ex parte Allen*, 619 S.W.3d 813, 816 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("A trial court abuses its discretion if its decision lies outside the zone of reasonable disagreement."). "To determine whether a trial court abused its discretion [in ruling on a request to reduce bail], we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd); *see Ex parte LaValle*, No. 14-23-00256-CR, 2024 WL 4984193, at *2 (Tex. App.—Houston [14th Dist.] Dec. 5, 2024, pet. ref'd) (citing *Ex parte Allen*, 619 S.W.3d at 816).

In reviewing a trial court's ruling on a habeas claim, we view the record and evidence in the light most favorable to the court's ruling. *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021) (citing *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006)). "The mere fact that a trial court may decide a matter

3

within its discretion differently than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). It is the appellant's burden to establish that the trial court abused its discretion in its bail determination. *Ex parte Rubac*, 611 S.W.2d at 849; *Ex parte McManus*, 618 S.W.3d 404, 407 (Tex. App.—Amarillo 2021, no pet.) ("In a proceeding seeking a reduction in the amount of pretrial bail, the accused bears the burden of proof to show that the bail is excessive."); *Ex parte Beard*, 92 S.W.3d 566, 568 (Tex. App.—Austin 2002, pet. ref'd) ("The burden is on the accused to prove that bail is excessive.").

## Applicable Law

The United States and Texas Constitutions protect the right to be free from excessive bail. U.S. Const. amend. VIII; Tex. Const. art. 1, § 11. The primary purpose of bail is to secure the presence of the defendant in court for trial. *Ex parte Vasquez,* 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Ex parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—Houston 14th Dist.] 2016, no pet.). "Determining the appropriate bail amount is a balancing act 'between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial." *Ex parte Cardenas*, 557 S.W.3d 722, 730 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.).

In considering whether the trial court abused its discretion in denying Burley's application for writ of habeas corpus requesting that his bond be reduced, we apply the factors enumerated in Article 17.15 of the Texas Code of Criminal Procedure. *See Ex parte Perez*, Nos. 02-10-00450-CR, 02-10-00451-CR, 2011 WL 255292, at *1–4 (Tex. App.—Fort Worth Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (considering Article 17.15 factors when defendant requested reduction in bail); *Ex parte Barnes*, No. 2-10-260-CR, 2010 WL 3433800, at *1–3 (Tex. App.—Fort Worth Aug. 31, 2010, no pet.) (mem. op., not designated for publication) (same); *Ex parte Gomez-Herrada*, No. 07-20-00177-CR, 2020 WL 7214293, at *5 (Tex. App.—Amarillo Dec. 7, 2020, no pet.) (mem. op., not designated for publication) (same). Article 17.15 instructs trial courts to consider the following factors in setting a defendant's amount of bail:

1. The bail and any conditions shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail shall be considered, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

5

7. The citizenship status of the defendant shall be considered.

TEX. CODE CRIM. PROC. art. 17.15.

In addition to the Article 17.15 factors, trial courts also may consider the following factors in setting the amount of bail:

1. the accused's work record;
2. the accused's family and community ties;
3. the accused's length of residency;
4. the accused's prior criminal record;
5. the accused's conformity with previous bond conditions;
6. the existence of other outstanding bonds, if any; and
7. aggravating circumstances alleged to have been involved in the charged offense.

*Smith v. State*, 829 S.W.2d 885, 887–88 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d at 849–50).

We review the same bail criteria on appeal. "On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion." *Ex parte Dixon*, 2015 WL 5453313, at *2 (citing TEX. CODE CRIM PROC. art. 17.15; TEX. CONST. art. I, §§ 11, 13). We determine whether a bail amount is reasonable "on a case-by-case basis, weighing factors unique to each defendant and each offense." *Ex parte Cardenas*, 557 S.W.3d at 730; *see also Ex parte Beard*, 92 S.W.3d at 571 (noting case law is "of relatively little value in addressing the ultimate

question of the appropriate amount of bail" because bail "cases are so individualized that generalization from results reached in others is difficult").

## Discussion

We now review the relevant bail factors based on the limited record before us to ensure the trial court did not abuse its discretion.[1]

### A. Sufficiently High Bail

We first consider whether the bail is "sufficient to give reasonable assurance that the undertaking will be complied with." TEX. CODE CRIM. PROC. art. 17.15. The $1,000,000 bail amount in this case was sufficient to give reasonable assurance that Burley will appear in court.

### B. Whether Bail is Oppressive and the Ability to Pay It

The second factor, the requirement that bail not be used as "an instrument of oppression," and the fourth factor, the ability to make bail, are related. We thus consider them together.

Burley argued in his application for writ of habeas corpus that his bond amount was "excessive" and in violation of the Eighth and Fourteenth Amendments to the United States Constitution; Article 1, Sections 11 and 13 of the Texas Constitution; and Articles 1.07, 1.08, 1.09, and 17.15 of the Texas Code of Criminal

---

[1]    The record does not include the indictment, the trial court's order setting bond or bond conditions, or the State's "prior proffer" referenced during the bond hearing.

Procedure.  Similarly, on appeal, he argues the bond set is not "a reasonable amount."  In his application, Burley stated he "ha[d] diligently attempted to raise the necessary funds for his bond through friends, family, and other sources, but ha[d] been unsuccessful."  He further stated he had "no additional funding, asset, or property from which he [could] readily apply to post his bail."  Finally, he stated he had the "assets to enable hi[m] to post a cash bond in the amount of $2,500.00."  Burley supported his application with his unsworn declaration.

"The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail excessive."  *Ex parte Tomlinson*, No. 14-02-00784-CR, 2002 WL 31008642, at *2 (Tex. App.—Houston [14th Dist.] Sept. 5, 2002, no pet.) (mem. op., not designated for publication); *see Ex parte Bogia*, 56 S.W.3d 835 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("The accused's ability or inability to make bond is relevant, but not controlling.").  "If the ability to make bond in a specified amount controlled, the role of the trial court in setting bond would be unnecessary and the accused would be able to set his own bond."  *Ex parte Tomlinson*, 2002 WL 31008642, at *2.

Bail set in a particular amount "becomes oppressive when it is based on the assumption that the defendant cannot afford bail in that amount and when it is set for the express purpose of forcing the defendant to remain incarcerated."  *Ex parte Moreno*, No. 01-20-00312-CR, 2021 WL 4733239, at *9 (Tex. App.—Houston [1st

8

Dist.] Oct. 12, 2021, no pet.) (mem. op., not designated for publication) (citing *Ex parte Nimnicht*, 467 S.W.3d 64, 70 (Tex. App.—San Antonio 2015, no pet.); *Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (stating that where bail amount was set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression")). We thus consider whether the record reflects the trial court made its decision regarding bail "for the purpose of forcing [Burley] to remain incarcerated pending trial." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

During the hearing on Burley's application, his counsel submitted a "Proffer for Bond Reduction," which the trial court admitted into evidence without objection. This was the only evidence offered in support of Burley's application.[2] The proffer indicates that Burley has numerous family members that live in Texas, including his fiancée, parents, sister, two brothers, three uncles, three aunts, and several cousins, nieces, and nephews. While in his application Burley states he "diligently attempted to raise the necessary funds for his bond through friends, family, and other sources," he did not explain or detail either in his application or during the hearing what efforts he undertook to furnish bail in the amount set by the court. Burley did not indicate

---

[2]    In the proffer, Burley addresses his assets stating, "no significant assets, no large or material amounts of money in any accounts or in cash, no business(es), no house ownership, no other assets of any significant value, knows of no friends, family, or others that [he] can borrow money from to make bond, etc."

9

who, among his family members or friends, he asked for assistance in raising bail money, and the record is also silent as to whether Burley or anyone on his behalf contacted a bondsman in an attempt to secure bail. *Ex parte Bartolo*, No. 01-22-00544-CR, 2022 WL 17254957, at *7 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, pet. ref'd) (mem. op., not designated for publication) ("Generally, to show that he cannot make bail, a defendant must demonstrate that his funds and his family's funds have been exhausted.") (citation omitted); *Ex parte Martinez*, No. 10-17-00420-CR, 2018 WL 1958016, at *3 (Tex. App.—Waco Apr. 25, 2018, no pet.) (mem. op., not designated for publication) (affirming denial of writ requesting reduction in bail amount and stating appellant did not explain what efforts, if any, were made to furnish the bond) (quoting citation omitted).

The hearing also was devoid of any corroborating testimony as no one testified on Burley's behalf regarding his or his family's inability to secure finances on his behalf to post bail in support of his proffer. Having only the proffer to consider, the trial court was assigned the task of determining whether Burley's proffered contentions were credible. *See Ex parte Reyes-Martinez*, 653 S.W.3d 273, 280 (Tex. App.—Austin 2022, no pet.) ("The trial court is the exclusive judge of witness credibility, and we afford it considerable discretion in making those challenging determinations.") (internal quotation omitted). To the extent the trial court found Burley's proffer not credible, we afford the trial court wide discretion in assessing

credibility. *See Ex parte Everage*, No. 03-17-00879-CR, 2018 WL 1788795, at \*9 (Tex. App.—Austin Apr. 13, 2018, no pet.) (mem. op., not designated for publication) (observing that bail cases involve "the difficult task of weighing the specific facts of a case against many, often contravening factors, and often in the face of scant evidence").

Even assuming the trial court credited the statements in Burley's proffer as true, that would not automatically establish the bond amount was excessive. *See Ex parte Bogia*, 56 S.W.3d at 837 (stating that an "accused's ability or inability to make bond is relevant, but not controlling") (citing *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975)). When considering whether a particular bail amount is reasonable, Article 17.15 requires consideration of a defendant's ability to make bail. *Ex parte Martinez*, 2018 WL 1958016, at \*3. But an "inability to make bail, even to the point of indigence, does not control over the other factors." *Id.* (quoting *Ex Parte Brossett*, 524 S.W.3d 213, 276 (Tex. App.—Waco 2016, pet. ref'd)). The "ability to make bail is to be regarded, and proof may be taken upon this point" as one of many factors to be considered by the trial court. *See* TEX. CODE CRIM. PROC. art. 17.15; *see also Ex parte Martinez*, 2018 WL 1958016, at \*3 (holding trial court did not abuse discretion in denying request to reduce bail despite appellant's and sister's testimony that he could not make amount of bail and taking into consideration other factors in affirming). As the Court of Criminal Appeals has

explained, the Legislature, in placing "a mandatory duty" on trial courts to consider the safety of the community when fixing bail, "requires trial courts to consider a fact that is not related to the amount the defendant can afford to pay." *Ex Parte Kretzer*, No. PD-1279-11, 2012 WL 1882245, at *1 (Tex. Crim. App. May 16, 2012) (not designated for publication) (citation omitted).

Based on the record and the limited evidence before the trial court on these bail factors, we cannot conclude the trial court set the amount of bail for the express purpose of keeping Burley incarcerated or as a means of oppression. *Ex parte Grant*, No. 01-23-00889-CR, 2024 WL 924433, at *5 (Tex. App.—Houston [1st Dist.] Mar. 5, 2024, no pet.) (mem. op., not designated for publication) (noting "nothing in our record shows that the trial court intentionally set a high bail amount to keep [appellant] incarcerated"); *Ex parte Moreno*, 2021 WL 4733239 (affirming trial court's denial to lower bail from $1,000,000 in capital murder case despite appellant's arguing she could not afford bail because she was indigent); *cf. Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (holding this factor weighed against trial court's decision where trial court stated, "I'd rather see him in jail than to see someone's life taken.").

During the bond hearing, Burley's counsel argued that a $1,000,000 bond was "extremely high" and "a more reasonable bond could be set with [certain] conditions." Relying on *Ex parte Durst*, where the appellate court held that the bail

12

amount set by the trial court was unconstitutionally excessive, Burley argued the bond in his case should be reduced. In *Ex parte Durst*, the bond was set at one billion dollars for each of three third-degree felony charges. 148 S.W.3d 496. The court held the trial court had used bail as an instrument of oppression because the amounts "were so excessive, no one could meet them—not Durst, and not any of the bail bond companies." *Id.* In addition, unlike Burley, who is charged with a violent gang related shooting and killing, Durst was not charged with a violent crime. *Id*. at 500 ("The offenses involved here are, in essence, victimless crimes.").[3] We thus find *Durst* distinguishable.

Because there is no indication that the trial court used bail as an instrument of oppression, the second and fourth factors do not weigh in favor of Burley's requested relief.

## C.    The Nature of the Offense

The third factor contemplates "the nature of the offense and the circumstances under which it was committed." The nature of the offense and the length of possible sentence are key considerations in determining the reasonableness of bail. *Ex parte Rubac*, 611 S.W.2d at 849 (highlighting these as primary factors); *see also Ex parte Nimnicht*, 457 S.W.3d at 67 ("When determining reasonable bail, a trial court shall

---

3    Durst was charged with two counts of felony bail jumping and failure to appear, and one count of tampering with evidence. *Ex parte Durst*, 148 S.W.3d at 499.

give the most weight to the nature of the offense and the length of possible sentence.").

Burley is charged with the offense of murder, a first-degree felony, and faces a punishment range of five to ninety-nine years' confinement or life imprisonment. *See* TEX. PENAL CODE §§ 19.02, 12.32(a). This range of punishment, should Burley be found guilty, weighs in favor of the trial court's ruling. *See In re Hulin*, 31 S.W.3d 754, 759 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("The primary factors to be considered in determining what constitutes reasonable bail are the punishment that can be imposed and the nature of the offense."); *Ex parte Bartolo*, 2022 WL 17254957, at \*5 ("The serious and violent nature of the first-degree felony offense of murder with which appellant is charged and the potential sentence appellant faces related to charged-felony offense weigh against a determination that the bail amount sent by the trial court was excessive.").

**D. Safety of the Community**

In making its bond determination, the trial court had to consider the future safety of the community. Burley has been charged with murder for the death of Daryl Gentry. During the bond hearing, the trial court heard from the State that when police arrived on the scene, they discovered a vehicle riddled with bullets, an unresponsive Gentry lying on his back about twenty-five feet from the vehicle, and seventy bullet shell casings consistent with Gentry being shot at least seventy times.

A police investigation revealed that the license plate on the shooter's car "came back to a stolen vehicle that had been stolen just prior to the homicide." Authorities later identified the car as "a rented vehicle [] rented with [Burley] and his girlfriend," which police ultimately recovered outside Burley's residence in New Braunfels. The State noted that a search warrant of Burley's cell phone number placed him at the location and time of the shooting, and video surveillance captured Burley exiting the car in question and entering an apartment complex prior to driving to his residence in New Braunfels. Upon conducting a search pursuant to an obtained search warrant, the police found a fired shell casing and drugs in Burley's vehicle, and cartridge casings inside his residence. The police also found a semiautomatic pistol, 40-caliber unfired cartridge casings, 30 nine-millimeter unfired cartridge casings, a magazine, a Glock nine-millimeter extended magazine, blue latex gloves, marijuana, and ecstasy pills.

The State represented to the trial court that Burley is a documented, known gang member of the Blood Stone Villains gang, a gang out of San Antonio, and believed this homicide was in retaliation for Gentry killing a gang member during a home invasion.

Based on the violent nature of the instant offense which according to the State, involves gang related activity, the trial court reasonably could have concluded that Burley poses a threat to the community. This factor supports the trial court's bond

15

decision. *See Burns v. State*, No. 05-23-01013-CR, 2024 WL 909840, at *5 (Tex. App.—Dallas Mar. 4, 2024, no pet.) (mem. op., not designated for publication) ("Considering the seriousness and violence of the charged offense [of burglary of habitation with intent to commit murder], the trial court could have concluded appellant posed a threat to the community . . . ." and noting that "this factor weighs against a determination the amount of bail was excessive").

### E.    Other Factors

Trial courts may also consider factors such as the accused's work record, his family and community ties, his length of residence, his prior criminal record, his conformity with previous bond conditions, the existence of other outstanding bonds, if any, and aggravating circumstances allegedly involved in the charged offense. *Smith*, 829 S.W.2d at 887–88 (citing *Ex parte Rubac*, 611 S.W.2d at 849).

During the bond hearing, the State argued that Burley has a criminal record consisting of multiple convictions, including resisting arrest in Victoria County, bail jumping and failure to appear in Victoria County in 2001, and failure to identify in 2023.  In addition to the above convictions, Burley also has pending criminal charges, including possession of a controlled substance in the first degree with intent to deliver pending in Comal County, "prohibited substance and [sic] correction facility" pending in Comal County, and possession of marijuana.  Further, the record reflects that Burley was incarcerated in federal prison for almost eleven years from

16

2005 until 2015. To counter this, defense counsel argued that while Burley had pending criminal charges, the charges did not involve violence. But the fact that Burley has past convictions, including one for bail jumping, and pending criminal charges, including the present charge of murder, supports the trial court's bond decision.

The record also reflects that Burley had no significant ties to the community. He has lived or worked in various cities in Texas, including Houston, San Antonio, New Braunfels, Victoria, and Blanco. As noted previously, no one testified on Burley's behalf at the bond hearing stating they would be responsible for him or would allow him to reside with them, and no one testified about his character to ensure that he was not a flight risk. These facts do not favor reduction in bond. *Compare Ex parte Estrada*, 640 S.W.3d 246 at 253 (several factors "favor[ed] a lower, more achievable bail amount," such as appellant had significant ties to area, always lived in Texas, maintained employment, and appellant's family members testified at bail hearing that they would ensure conditions set by court would be followed, and appellant planned to reside with family upon release from custody).

Given our analysis of the Article 17.15 factors and the supplemental factors, we find the trial court weighed the relevant factors and properly exercised its discretion in denying Burley's request to lower his bond.

## Conclusion

Based on the record before this Court, we cannot conclude the trial court abused its discretion in denying Burley's application for writ of habeas corpus. The serious and violent nature of the charged offense, a potential life sentence, and appellant's prior criminal record, including a conviction for bail jumping, all weigh heavily against any mitigating factors. We thus affirm the trial court's judgment denying Burley's habeas application for bond reduction.

**PER CURIAM**

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).